Arthur C. Aulisi, J.
This CPLR article 78 proceeding was instituted by the petitioner against the New York State Racing and Wagering Board (hereinafter Board) for a judgment directing the Board to take certain actions against the Capital District Regional Off-Track Betting Corporation (hereinafter Capital District) in order to prevent certain alleged threatened violations of the statute and rules and regulations relating to off-track betting.
The Board has "general jurisdiction over the operation of all off-track betting facilities within the state” and is authorized *329 to "issue rules and regulations in accordance with the provisions” of this statute. (Off-Track Pari-Mutuel Betting Law, § 118, subd 1; L 1973, ch 346, § 4.)
Although initially Capital District was not made a party to this proceeding, it was served with copies of the order to show cause and the petition upon which it was granted and has since moved for, and was granted, permission to intervene as a party respondent. (CPLR 7802, subd [d].)
The petitioner is a not-for-profit corporation (Not-for-Profit Corporation Law, § 102, subd [a], pars [5], [10]), whose members have an interest in harness racing, and claims that the planned activities of Capital District, in conducting a Kentucky Derby ball and all-star revue, are illegal and will adversely affect the pecuniary interests of its 442 members. The event, which Capital District is undertaking as a promotional endeavor in furtherance of its corporate purposes, is scheduled to be held on May 6, 1977, between the hours of 8:30 p.m. and 1:00 a.m. of the following day, the eve of the Kentucky Derby, at the Empire State Plaza Convention Center, at Albany, and will feature live entertainment by nationally recognized performers and an orchestra. The premises being rented by Capital District for the occasion consist of the convention hall where the ball and revue will take place and meeting rooms 1, 2, 3, 4 and 5 in which a private party will be held for invited guests of Capital District. Beverages will be sold to patrons at the ball and both food and beverages will be available at the private party. These arrangements are being handled by the convention center caterer for its own account. In addition, the convention center has assigned to Capital District for the evening separate space and facilities for a branch off-track betting location. In this space, which is separated from the lobby by a permanent wall some 125 to 150 feet distant from the entrance to the hall, a separate enclosure has been constructed in which 10 betting registers and telephone lines have been installed.
The price of admission to the ball and revue is $7 and tickets are available at all branch offices of Capital District. One part of the three-part ticket entitles the holder to one $2 wager on the 1977 Kentucky Derby, subject to rules and regulations printed on the reverse side, which among other things, limits the use of the free wager part of the ticket to the evening of the ball between the hours of 6:00 p.m. and 1:00 A.M.
*330 It is contended by the petitioner that the ban on food and beverages contained in the statute and rules will be violated if the ball is allowed to take place because service of food and beverages and off-track betting will occur within the same building. Petitioner also urges that since the wagering part of the ticket is not redeemable for cash, nonbettors attending the ball will have to pay $2 more than bettors and it will be possible for minors to wager, in violation of the statute and rules, because no restrictions on the ticket expressly prohibit the use of the wagering part of the ticket by minors.
Petitioner advances two grounds in support of its right to bring this proceeding: (1) that since the purse structure at the Saratoga Raceway (harness track), where its members drive, is based in part upon revenues obtained by the track from offtrack betting made on races at the metropolitan thoroughbred tracks, the betting on the Kentucky Derby during the evening of the ball will necessarily reduce the amount of wagering at the metropolitan tracks to the detriment of its members, and (2) that the affair being held will result in a reduced attendance at Saratoga Raceway, which is open the same evening, because potential bettors, who might otherwise go to the harness track, may attend the ball.
Apart from the question of whether the petitioner has standing to bring this proceeding or the appropriateness of the remedy sought to be invoked against the respondent Board, it is the opinion of this court that the petition must be dismissed because it fails to state facts upon which legal relief can be granted.
In addition to the general grant of power to the Board to issue rules and regulations as noted above, the Legislature has expressly directed the Board to establish general regulations in specifically prescribed areas. (Off-Track Pari-Mutuel Betting Law, § 118, subd 3; L 1973, ch 346, § 4, as amd by L 1973, ch 414, § 5.) This subdivision provides, in pertinent part, as follows: "3. Without limiting the generality of the foregoing, the board shall establish such general regulations to limit the access to off-track betting establishments of persons not permitted to bet therein * * * and shall prohibit the sale of food and beverages in all facilities where bets may be placed.”
The rules and regulations adopted by the Board are contained in the Official Compilation of Codes, Rules and Regulations of the State of New York and, as related to the issues *331 herein, are set forth in 9 NYCRR 5204.1, 5204.6 and 5204.10, which state, in part, as follows:
"Section 5204.1 Persons prohibited from entry into a branch office. Any person * * * (e) who is eating or drinking; may not enter a branch office, or remain there if already in a branch office.
"5204.6 Food and beverages. No food or beverages may be sold, served or consumed, nor merchandise of any kind sold by vending machine or otherwise in the public area of any branch office without the prior approval of the board.
"5204.10 Betting by a person under the age of 18. A person who is less than 18 years of age shall not enter a branch office, and shall not place a bet at any branch office directly, for himself or for or through another person.”
The petitioner argues that since off-track betting will take place within the convention center, the entire convention center must be considered as the off-track betting facility "as defined under the terms of said law” and that the service of food and beverages within any part of the convention center will constitute a violation of the law. In support of this argument, it is urged that the physical separation of the various functions of the evening is unimportant insofar as a proper construction of the statute is concerned. This argument, however, is untenable and not in accord with the plain meaning of the statute and the rules and regulations adopted pursuant thereto. It should be noted at the outset that although the statute speaks of off-track betting facilities, the terms "facility” and "facilities” are used sparingly in the rules and regulations of the Board. Nowhere in the statute are such terms defined, as petitioner seems to suggest in its petition, nor does any such definition appear in any of the rules and regulations of the Board. The word "facility” is used twice under 9 NYCRR 5200.1 (Definitions), under subdivisions (e) and (j) to define the terms "Out of State track” and "Telephone deposit betting center”, and the term "facilities” is used once under 9 NYCRR 5205.1 (Data processing center) in referring to data processing facilities. Instead of using the terms "facility” or "facilities”, the Board, in its rules and regulations, has employed the term "branch office” which is defined in 9 NYCRR 5200.1 (b) as the premises maintained and operated by a regional off-track betting corporation at which premises lawful off-track pari-mutuel wagering may take place. Thus, while the term "facilities” may be used to *332 describe all operations of a regional off-track betting corporation, betting or otherwise, the term "branch office” is restricted to that part of such operations denoting the place where bets may be placed. This construction is in keeping with the statutory provisions. The construction advocated by petitioner would ignore and render meaningless the descriptive language contained in the enjoining provision of subdivision 3 of section 118 of the Off-Track Pari-Mutuel Betting Law, which is made applicable to "facilities where bets may be placed”. (Emphasis supplied.) It would deny to the convention center the opportunity to make the fullest use of its premises in the event that food and beverages were not available at Capital District’s ball and party and any other person or group wished to hold an affair in other rooms not rented to Capital District for the evening at which food and beverages would be desired. The obvious purpose of the statute is to keep the two activities separate and the statutory requirement is being met by Capital District’s maintenance of the betting area in a separate location away from the ball and party. Indeed, there are numerous instances where off-track betting branch offices are located in the same building in which restaurants are in operation. An example is Capital District’s Woodlawn Branch, in Schenectady, where the entrances to the respective establishments off a common corridor are not more than 12 feet apart. Moreover, it would seem that the rules and regulations of the Board contemplate situations where branch offices may be in close proximity to food and beverage establishments. 9 NYCRR 5204.1 (e) prohibits any person who is eating or drinking from entering a branch office or remaining there if already in a branch office.
The argument of the petitioner with respect to minors is also without merit. Persons under 18 years of age who attend the ball and all-star revue will simply be paying $7 for the affair and will not have the right to place bets on the Kentucky Derby or, for that matter, enter into the wagering enclosure. There is no more likelihood that minors would place bets at the affair than there is for them to wager at any other off-track betting establishment and it would seem that Capital District’s employees would exercise the same precautions to guard against such wagers at the affair as they would elsewhere. Presumably, Capital District, which conducts a substantial operation, and a profitable one according to recent reports, will not run the risk of jeopardizing its franchise by accepting wagers on the derby from minors.
*333 There can be no question with regard to Capital District accepting bets on the Kentucky Derby. The Board, by statute, is authorized to designate in each year a maximum of five thoroughbred or steeplechase races on out-of-State tracks, as races of special interest, on which a regional corporation, such as Capital District, may accept wagers. (Off-Track Pari-Mutuel Betting Law, § 121, subd 6; L 1973, ch 346, § 4.) Not only does petitioner concede the statutory authority, but it is unable to controvert the affirmative showing in the papers submitted by Capital District that the Board has granted Capital District’s request for permission to accept wagers on the Kentucky Derby.
The most that can be said of petitioner’s grievance is that a person attending the ball and making the derby bet would, if the ball was not held, spend an equal sum at Saratoga Raceway the same evening or on races at the metropolitan tracks on the following day. Implicit in petitioner’s complaint is the suggestion that the money wagered at the affair would eventually filter into the coffers of Saratoga Raceway and ultimately benefit its members. Such a conclusion, of course, is purely conjectural and too remote and too speculative to warrant the granting of the relief sought herein. It would be equally consistent to suggest that the same bettor may be determined to bet the derby, ball or no ball, because, after all is said, the Kentucky Derby is the premier event in all horse racing. Petitioner’s members should know that from a bettor’s standpoint there is no such thing in horse racing as a "sure thing”, except that a bettor will find that at any race track there will be more seller windows than cashier windows.
In view of the foregoing, the application is denied and the petition is dismissed.